IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JESSE ALVAREZ, | § | |
| TDCJ No. 2176191, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | EP-18-CV-374-KC |
| | § | |
| LORIE DAVIS, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
|     Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Jesse Alvarez, a state prisoner, challenges Respondent Lori Davis's custody of him through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 8). Alvarez claims the state trial judge was biased, his counsel provided constitutionally ineffective assistance, and his guilty plea was involuntary. Pet'r's Pet 6–7, ECF No. 8. Davis avers "Alvarez's first claim was waived by his voluntary guilty plea, the second is meritless, and the third is procedurally defaulted and meritless." Resp't's Answer 1, ECF No. 25. After reviewing the record and for the reasons discussed below, the Court finds that Alvarez is not entitled to federal habeas relief. Consequently, the Court will deny his petition and, additionally, deny him a certificate of appealability.

### BACKGROUND AND PROCEDURAL HISTORY

On December 30, 2013, Alvarez robbed Justin Cynor at knifepoint. Clerk's R., ECF No. 27-7, p. 5 (Indictment). On January 27, 2014, he was found with less than four grams of methamphetamine in his possession. Clerk's R., ECF No. 22-9, p. 5 (Indictment). Consequently, he was indicted by a grand jury for aggravated robbery in cause number 20140D00804 and possession of a controlled substance in cause number 20140D001491 in the

41st Judicial District Court of El Paso County, Texas. Pet'r's Pet. 2, ECF No. 8. The indictments noted Alvarez had prior convictions for robbery in cause number 960D11357 in the 243rd District Court and for possession of a controlled substance in cause number 20070D02952 in the 41st Judicial District Court. Alvarez pled guilty, pursuant to a plea agreement, to both offenses and, on January 8, 2018, he was sentenced to twenty-five years' confinement for the aggravated robbery in cause number 20140D00804 and twenty years' confinement for the possession of a controlled substance in cause number 20140D001491. Clerk's R., ECF No. 22-7, pp. 6–18 (J. and Plea Agreement); Clerk's R., ECF No. 22-9, pp. 6–18 (J. and Plea Agreement). The Court sentenced Alvarez for other offenses during the same hearing. Alvarez waived his right to appeal in his plea agreement except in very limited circumstances. Hence, he did not appeal.

Alvarez filed timely state applications for writs of habeas corpus for each offense on June 26, 2018. Clerk's R., ECF 22-7, pp. 19–34 (State Writ Application – 04); Clerk's R., ECF 22-9, pp. 19–36 (State Writ Application – 05). In both applications he asserted the same four claims. First, he maintained he was not competent to stand trial and "Judge Perez refused to accept six exhibits stating [he] was incompetent to stand trial." Clerk's R., ECF 22-7, p. 25 (State Writ Application – 04); Clerk's R., ECF 22-9, p. 25 (State Writ Application – 05). Second, he argued he was denied due process because he was not competent at the time of his plea hearing. Clerk's R., ECF 22-7, p. 26 (State Writ Application – 04); Clerk's R., ECF 22-9, p. 26 (State Writ Application – 05). Third, he claimed Judge Perez erred when she did not seek amicus counsel to advise her on his competency. Clerk's R., ECF 22-7, p. 29 (State Writ Application – 04); Clerk's R., ECF 22-9, p. 29 (State Writ Application – 05). Finally, he complained his counsel provided ineffective assistance when he did not research his prior psychiatric evaluations—including one

conducted as recently as twenty days before his plea hearing—and argue he was not competent to stand trial.  Clerk's R., ECF 22-7, p. 30 (State Writ Application – 04); Clerk's R., ECF 22-9, p. 30 (State Writ Application – 05).  The Texas Court of Criminal Appeals denied both applications without written order on July 18, 2018.  Action Taken, ECF 22-6; Action Taken, ECF 22-8.

Alvarez subsequently filed two more state writ applications.  Clerk's R., ECF 22-14, pp. 22–38 (State Writ Application – 06); ECF 22-20, pp. 22–38 (State Writ Application – 07).  In these applications he claimed his pleas were "involuntary" because his lawyers ignored his mental health and coached him to get through his plea hearing.  Clerk's R., ECF 22-14, p. 44 (State Writ Application – 06); ECF 22-20, p. 44 (State Writ Application – 07).  The Court of Criminal Appeals dismissed both applications as subsequent and an abuse of the writ statute under Texas Code of Criminal Procedure article 11.07, § 4(a)–(c), on November 7, 2018.  Action Taken, ECF 22-10; Action Taken, ECF 22-15.  Alverez's federal petition followed on December 3, 2018.

Alvarez now asserts three grounds for relief.  Pet'r's Pet 6–7, ECF No. 8.  First, he alleges the trial judge exhibited bias "by not participating impartially in the matter of Petitioner's incompetence to stand trial."  *Id.*, at 13.  He maintains she ignored the mental health diagnoses given to him at the Rusk and Vernon state mental hospitals and "sought state-sponsored doctors, who would give contrary diagnoses."  *Id.*  Second, he contends his counsel provided constitutionally ineffective assistance when they "failed to investigate and take proper 'pre-trial' measures to present 'material evidence' in support of Petitioner's only line of defense, which was his 'incompetence to stand trial.'"  *Id.*, at 15.  Finally, he claims he "was sedated on strong psychotropic medications" at the time of his plea hearing and, as a consequence, "his plea of guilty was involuntary, and not made knowingly, nor intelligently."  *Id.*, at 17.  Alvarez asks for an evidentiary hearing and for the Court to "revers[e] and remand . . . his conviction or in the

alternative [enter a judgment of] acquittal." *Id.*, at 17–18.

## APPLICABLE LAW

"[C]ollateral review is different from direct review," and the writ of habeas corpus is "an extraordinary remedy," reserved for those petitioners whom "society has grievously wronged." *Brecht v. Abrahamson*, 507 U.S. 619, 633–34 (1993). It "is designed to guard against extreme malfunctions in the state criminal justice system." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). It provides an important, but limited, examination of an inmate's conviction and sentence. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("[S]tate courts are the principal forum for asserting constitutional challenges to state convictions.").

As a result, the federal habeas courts' role in reviewing state prisoner petitions is exceedingly narrow. "Indeed, federal courts do not sit as courts of appeal and error for state court convictions." *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). They must generally defer to state court decisions on the merits. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). And they must defer to state court decisions on procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998). They may not grant relief to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

In sum, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."

*Harrington*, 562 U.S. at 102–03 (quoting *Jackson*, 443 U.S. at 332, n.5). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

### A. Adjudicated Claims

For claims previously adjudicated in state court, 28 U.S.C. § 2254(d) imposes a highly deferential standard which demands a federal habeas court grant relief only where the state court judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Moreover, the federal habeas court's focus is on the state court's ultimate legal conclusion, not whether the state court considered and discussed every angle of the evidence. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) ("we review only the state court's decision, not its reasoning or written opinion"). And state courts are presumed to "know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Factual findings, including credibility choices, are entitled to the statutory presumption, so long as they are not unreasonable "in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Further, factual determinations made by a state court enjoy a presumption of correctness which the petitioner can rebut only by clear and convincing evidence. *Id.* § 2254(e)(1); *see Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir.

2006) (noting that a state court's determination under § 2254(d)(2) is a question of fact). The presumption of correctness applies not only to express findings of fact, but also to "unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

### B. Unadjudicated Claims

A state prisoner must exhaust available state remedies before seeking federal habeas corpus relief, thereby giving the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *See* 28 U.S.C. § 2254(b)(1) (explaining that habeas corpus relief may not be granted "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State"); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

When a state prisoner presents unexhausted claims, the federal habeas court may dismiss the petition. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 519–20 (1982)). If a state prisoner presents a "mixed petition" containing both exhausted and unexhausted claims, the federal habeas court may *stay* the proceedings or *dismiss* the petition without prejudice to allow the petitioner to return to state court and exhaust his claims. *Rhines v. Weber*, 544 U.S. 269, 278 (2005); *Pliler v. Ford*, 542 U.S. 225, 227 (2004). Alternatively, the federal habeas court may *deny* relief on an unexhausted or mixed claim on the merits, notwithstanding the petitioner's failure to exhaust the remedies available in state court. 28 U.S.C. § 2254(b)(2). A federal habeas court may *grant* relief on an unexhausted or procedurally defaulted claim *only* if the petitioner demonstrates cause for the default and actual prejudice arising from the default—or shows the failure to consider the claim

would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749–50; *Barrientes v. Johnson*, 221 F.3d 741, 758 (5th Cir. 2000). This means that before a federal habeas court may grant relief on an unexhausted claim, the petitioner must show that some objective, external factor prevented him from complying with the state procedural rule. *Martinez v. Ryan*, 566 U.S. 1, 13–14 (2012). When reviewing an unexhausted claim on the merits, the deferential standard of review does not apply. Instead, the federal habeas court examines unexhausted claims under a de novo standard of review. *Cullen v. Pinholster*, 563 U.S. 170, 185–86 (2011); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

## ANALYSIS

### A. Judicial Bias

Alvarez alleges the trial judge exhibited bias "by not participating impartially in the matter of Petitioner's incompetence to stand trial" at his plea hearing. Pet'r's Pet. 13, ECF No. 8. He maintains she ignored the mental health diagnoses given to him at the Rusk and Vernon state mental hospitals and "sought state-sponsored doctors, who would give contrary diagnoses." *Id.*

"[T]he Constitution does not permit trial of an individual who lacks 'mental competency.'" *Indiana v. Edwards*, 554 U.S. 164, 170 (2008). But a defendant is deemed competent to stand trial if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and if] he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam). And competency to stand trial is a question of fact. *Maggio v. Fulford*, 462 U.S. 111, 117 (1983) (per curiam).

Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct" and the habeas petitioner bears "the burden of rebutting the presumption

of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Because competency to stand trial is a question of fact, a federal court must afford the state trial court the deference due under § 2254(e)(1). *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). In other words, under § 2254(e)(1), the state trial court's determination that a defendant is competent to stand trial and plead guilty is presumed correct.

The state trial judge determined Alverez was competent to stand trial at his plea hearing on November 30, 2017, in cause numbers 20140D00804 and 20140D001491, as well as cause numbers 20090D01738, 20110D02034, 20140D03710, 20150D00866, 20150D01060, 20110D04489, 20130D00795, 20130D03372, and 20140D03929:

> THE COURT: Ms. Estrada, have you had an opportunity to explain State's Exhibits Number 1 [the plea agreement] to your client in each of these cases?
> MS. ESTRADA: I have, Your Honor.
> THE COURT: Did he appear to understand all of your explanations?
> MS. ESTRADA: It appeared that he did.
> THE COURT: Did he appear to sign all of these documents freely and voluntarily?
> MS. ESTRADA: It's my opinion that he did.
> THE COURT: Have you formed an opinion on whether Mr. Alvarez is competent to proceed in these cases?
> MS. ESTRADA: It's my opinion that he is, Your Honor.
> THE COURT: All right. And you've had substantial opportunity to discuss these cases with him?
> MS. ESTRADA: We have, Judge.
> THE COURT: Has he appeared to understand all of your explanations?
> MS. ESTRADA: We believe that he did.
> THE COURT: Has he been able to assist you in his defense?
> MS. ESTRADA: He has, Your Honor.
> THE COURT: The Court will find the defendant competent to proceed based on the opinion of his defense counsel and by observation in the courtroom here today.

Plea Tr., 7–9, ECF No. 22-23. The state trial judge revisited the issue of Alverez's competence at his sentencing hearing:

> THE COURT: . . . .
> On November 20th, 2017, Mr. Alvarez pled guilty to each of these cases.

> . . . The pleas were taken pursuant to a plea agreement with the State of Texas. The Court certainly at that time and through this time understands and is aware of his mental health condition, but ultimately he -- by the time of that plea, he was found competent, was given quite a bit of time to work with his attorney towards trial. All these cases were set for trial.
> And then pursuant to the plea agreement with the State, Mr. Alvarez agreed to take the plea. Pursuant to that agreement, on that day I explored rather extensively -- at least to my satisfaction -- that he was competent to proceed. He indicated he understood the plea. He indicated he understood the plea agreement. He understood the -- his rights and certainly his right to have a trial if he chose to do so, and then his satisfaction with his defense counsel at that time.
> And then upon request of the defense, a request was made that he be allowed to remain outside of custody through the holidays. Mr. Alvarez had been separated from his family for quite an extensive period of time. These cases are serious. I believe he's habitualized, and he had been in custody in large part because of the serious nature of those cases but also because he needed inpatient forensic care with -- through State facilities to regain competency at various times. And so he experienced quite a bit of separation from his family; and the Court being sympathetic to that, allowed him to be released -- or to remain outside of custody through the holidays. And his sentencing was scheduled for January 3rd of this year.
> Come January 3rd, I receive a fax from his mother, indicating that "He's been admitted to UBH," Universal Behavioral Health Center, and Mr. Alvarez failed to appear at his sentencing. No other information is given at that time, and I requested warrants to be issued in each of those cases. Eleven warrants were issued upon my signature.
> . . . .
> Dr. Baida advised me . . . that Mr. Alvarez was suffering from high levels of anxiety stemming from his sentencing and eventual prison. And he expressed suicidal thoughts. He believed that Mr. Alvarez was suffering from depression and he -- there was no indication to me at that point by Dr. Baida, there was no concern with legal competency. It was very clearly a very high level of anxiety and depression.

Sentencing Tr. 5, 6, 10, ECF No. 22-22.

The Texas Court of Criminal Appeals then rejected Alverez's claim that the trial judge exhibited bias by not participating impartially in the matter of Petitioner's incompetence to stand trial without a written order. Action Taken, ECF 22-6; Action Taken, ECF 22-8.

A history of mental illness does not per se establish a defendant's incompetency to stand

trial. *McCoy v. Lynaugh*, 874 F.2d 954, 960–61 (5th Cir. 1989). A recent history of suicidality and depression does not render a defendant incompetent. *See Drope v. Missouri*, 420 U.S. 162, 181 n.16 (1975) (recognizing that "a suicide attempt need not always signal 'an inability to perceive reality accurately, to reason logically and to make plans and carry them out in an organized fashion'") (quoting David F. Greenberg, *Involuntary Psychiatric Commitments to Prevent Suicide*, 49 N.Y.U. L. REV. 227, 236 (1974))). "[T]he standard for competence to stand trial is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky*, 362 U.S. at 402).

Alverez demonstrated at his plea hearing that he understood the charges against him and the possible consequences, as well as an ability to make strategic choices and to communicate clearly to the state trial court. *Dusky*, 362 U.S. at 402. The state trial court accordingly determined he was competent to stand trial. The Court of Criminal Appeals later rejected his claim in his state writ application. Action Taken, ECF 22-6; Action Taken, ECF 22-8.

Under § 2254, the state courts' factual determination that Alvarez was competent to stand trial and plead guilty is presumed correct. 28 U.S.C. § 2254(e)(1). Moreover, the record simply does not support Alverez's assertion that the trial judge exhibited bias "by not participating impartially in the matter of [his] incompetence to stand trial" at his plea hearing. Pet'r's Pet. 13, ECF No. 8. In other words, the evidence Alverez presents is insufficient to overcome the indicators of competence noted and relied upon by the state trial court. Indeed, although Alverez presents evidence of mental illness in his federal habeas petition, he has not demonstrated by clear

and convincing evidence that he was not competent to stand trial or plead guilty at the time he entered his pleas.

Alverez is not entitled to relief on this claim.

### B. Ineffective Assistance of Counsel

Alverez contends his counsel provided constitutionally ineffective assistance when they "failed to investigate and take proper 'pre-trial' measures to present 'material evidence' in support of [his] only line of defense, which was his 'incompetence to stand trial.'" *Id.*, at 15.

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017). A court analyzes ineffective assistance of counsel claims under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A court will grant relief where a petitioner demonstrates (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689–94. Unless the petitioner establishes both—deficient performance and prejudice—his ineffective assistance of counsel claim fails. *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002).

Under the first *Strickland* prong, a petitioner must establish his counsel's performance fell below an objective standard of reasonable competence. *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993). But when deciding whether counsel's performance was deficient, a federal habeas court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 at 688–89. Hence, a federal habeas court presumes that counsel's choice of trial

strategy is objectively reasonable unless clearly proven otherwise. *Id.* at 689. Indeed, Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Id*. at 673; *Pape v. Thaler*, 645 F.3d 281, 289–90 (5th Cir. 2011). Furthermore, Counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument. *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006).

Under the second *Strickland* prong, a petitioner must demonstrate his counsel's deficient performance prejudiced him. *Id*., at 764. He "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "deficient performance does not result in prejudice unless that conduct so undermined the proper functioning of the adversary process that the trial cannot be relied upon as having produced a just result." *Knox v. Johnson*, 224 F.3d 470, 479 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 687).

In addition to applying the *Strickland* two-prong test, a federal habeas court must review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen*, 563 U.S. at 190. It must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101.

In this case, the trial judge was thoroughly familiar with Alverez's mental health history.

At his sentencing hearing, the trial judge explained she had been placing him in mental health facilities for treatment since 2009:

> Mr. Alvarez, you know that you've been all of these years -- your oldest case is from 2009 -- and all of this time, we have not at all tried to adjudicate you but instead have put you in mental health facilities. You've been under -- and that's under my direction, under the direction of the previous judge, Judge Bramblett. It has been addressed and I'm completely familiar with your mental health. Nothing further needs to be said about it because it's all very well-documented in the paperwork.

Sentencing Tr. 16, ECF No. 22-22.

As detailed above, the record supports a conclusion that Alvarez was competent at the time he pled guilty to both offenses. Alvarez fails to provide any support for the allegation that further investigation by counsel would have resulted in evidence that he was incompetent at the time he pleaded guilty. He has failed to meet his burden of showing there is a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Texas Court of Criminal Appeals rejected Alverez's ineffective assistance of counsel claim without a written order. Action Taken, ECF 22-6; Action Taken, ECF 22-8. The state court's decision to deny relief was not in conflict with clearly established federal law or "based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). Alverez has not met his burden of showing the state court's determination was not only incorrect, but also unreasonable. *Knowles*, 556 U.S. at 123.

Alverez is not entitled to relief on this claim.

### C. Involuntary Plea

Finally, Alvarez claims he "was sedated on strong psychotropic medications" at the time of

his plea hearing and, as a consequence, "his plea of guilty was involuntary, and not made knowingly, nor intelligently." Pet'r's Pet 17, ECF No. 8.

In two state writ applications, Alvarez claimed his pleas were "involuntary" because his lawyers ignored his mental health and coached him to get through his plea hearing. Clerk's R., ECF 22-14, p. 44 (State Writ Application – 06); ECF 22-20, p. 44 (State Writ Application – 07). But the Court of Criminal Appeals dismissed both applications as subsequent and an abuse of the writ statute under Texas Code of Criminal Procedure article 11.07, § 4(a)–(c), on November 7, 2018. Action Taken, ECF 22-10; Action Taken, ECF 22-15. As a result, the claim that his pleas were involuntary was procedurally defaulted under state law.

If the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default, federal review of that claim is procedurally barred. *Harris v. Reed*, 489 U.S. 255, 265 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995). A state prisoner may obtain federal habeas relief only by showing cause for the default and actual prejudice attributable to the default. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87–88 (1977).

Alvarez did not raise his involuntary plea claim in his original state writ applications which were denied on the merits. Clerk's R., ECF 22-7, pp. 19–34 (State Writ Application – 04); Clerk's R., ECF 22-9, pp. 19–36 (State Writ Application – 05). Rather, he raised it in his state writ applications which were dismissed as successive under Texas Code of Criminal Procedure Article 11.07 § 4(a)–(c). Clerk's R., ECF 22-14, p. 44 (State Writ Application – 06); ECF 22-20, p. 44 (State Writ Application – 07).

The Fifth Circuit has noted Texas courts have strictly and regularly applied article 11.07 §

4 since 1994 and has held it accordingly provides an adequate and independent state procedural ground to bar federal habeas review. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995).

While Alvarez did question the voluntariness of his guilty pleas in his state writ applications denied on the merits, these claims were based on facts unrelated to his instant claims and thus were different. *See Picard v. Connor*, 404 U.S. 270, 275–77 (1971) (explaining that, for a claim to be exhausted, the state court system must have been presented with the same facts and legal theory upon which the petitioner bases his assertions); *see also Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir. 2001) ("[I]t is not enough . . . that a somewhat similar state-law claim was made.") (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).

Alvarez addresses the statutory bar in his federal petition—but argues exclusively that the State erred on the issue of successiveness. Pet'r's Pet 12–13, ECF No. 8. As a result, Alvarez fails to demonstrate cause for the default or actual prejudice.

The explicit application of a procedural bar therefore prevents the Court from granting Alvarez relief on his third claim.

## EVIDENTIARY HEARING

Alvarez requests an evidentiary hearing to further develop the record in support of his claims. A federal court's review of claims previously adjudicated on the merits by a state court "is limited to the record that was before the state court." *Cullen*, 563 U.S. at 181; *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011). A court may hold an evidentiary hearing only when the petitioner shows that (1) a claim relies on a new, retroactive rule of constitutional law that was previously unavailable, (2) a claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, or (3) the facts underlying the claim show by clear and

convincing evidence that, but for the constitutional error, no reasonable juror would have convicted the petitioner. 28 U.S.C. § 2254(e)(2). Here, Alvarez's petition asserts multiple claims already adjudicated on the merits in state court or procedurally barred. He does not rely on a new rule of constitutional law or new evidence. Therefore, he is not entitled to an evidentiary hearing.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Gonzalez v. Thaler*, 132 S. Ct. 641, 646 (2012). In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, Alverez has not made a substantial showing of the denial of a constitutional right. Thus, reasonable jurists could not debate the denial of Alverez's § 2254 petition or find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Therefore, the Court shall not issue a certificate of appealability.

## CONCLUSIONS AND ORDERS

The Court concludes that Alverez is not entitled to § 2254 relief. The Court further concludes that Alverez is not entitled to a certificate of appealability. The Court, therefore, enters

the following orders:

**IT IS ORDERED** that Alverez's motion for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED** that Alverez's "Petition for a Writ of Habeas Corpus by a Person in State Custody" under 28 U.S.C. § 2254 (ECF No. 8) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

**IT IS FURTHER ORDERED** that all pending motions are **DENIED**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

SIGNED this 2nd day of October, 2019.

**KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE**